UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY,

                    Plaintiff,

    -against-                                  1:18-CV-1461 (LEK/CFH)

LISA H. SCOTT, *et al.*,

                      Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Allstate Vehicle and Property Insurance Company seeks a declaratory judgment under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57[1] that it has no obligation to defend or indemnify its insured, Lisa H. Scott, in an underlying personal injury action filed in New York state court ("Underlying Action"). Dkt. Nos. 1 ("Complaint"); 1-1 ("State Court Complaint"); 1-2 ("Scott's Allstate Home & House Policy" or the "Policy"). In addition to Scott, several individuals involved in the Underlying Action are defendants in this case, including Marie Barbera, Luis Marmolejo, and Alexandra Maria Joa-Gilbert. Compl.; State Court Compl. Plaintiff has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedural 12(c). Dkt. Nos. 22 ("Rule 12(c) Motion"); 22-1 ("Plaintiff's Memorandum"). Marmolejo and Joa-Gilbert have collectively opposed the Rule 12(c) Motion, Dkt. Nos. 24 ("Marmolejo and Joa-Gilbert Opposition"); 24-1 ("Marmolejo and Joa-Gilbert Memorandum"), as has Barbera, Dkt.

---

[1] Although not explicitly stated, the Court construes Plaintiff's claim to arise under these provisions.

Nos. 27 ("Barbera Opposition"); 27-1 ("Barbera Memorandum").[2] Plaintiff has filed a single reply to the oppositions. Dkt. No. 29 ("Reply").

For the reasons that follow, Plaintiff's Rule 12(c) Motion is granted.

## II. BACKGROUND

"On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

### A. The Underlying Action

On June 10, 2017, Marmolejo, Joa-Gilbert, Barbera, and Barbera's son, J.B., were at Scott's home. Compl. ¶ 15; State Court Compl. ¶ 17. At some point after gathering at the Scott

---

[2] Scott has declined to answer the Complaint "or otherwise appear[] in this action." Dkt. No. 30 ("May 2019 Status Report"). Although not an issue raised by the parties, Plaintiff may still proceed with its case against Barbera, Marmolejo, and Joa-Gilbert even though none of them are insured under the Policy and Scott will not defend against the action. See Penn Am. Ins. Co. v. Valade, 28 F. App'x 253, 257 (4th Cir. 2002) ("When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing—independent of that of the insured—to defend itself in the declaratory judgment proceeding."); see also Hawkeye-Sec. Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962) (explaining that an injured third party retains standing to defend a declaratory action against it even when the insured party has been dismissed from the case because "[i]t would be anomalous to hold here that an actual controversy exists between [the injured third party] and [the insurer] and yet deny [the injured third party] the right to participate in the controversy.").

household, Scott permitted J.B. and Scott's daughter[3] to travel in a 2016 Kia automobile owned by Joa-Gilbert yet driven by Marmolejo. Compl. ¶¶ 11–14, 16; State Court. Compl. ¶ 13. J.B., Scott's daughter, and Marmolejo then got into a car accident. Compl. ¶ 10.

Barbera, individually and on behalf of J.B., has sued Scott for negligently allowing J.B. to ride in a vehicle with an insufficient number of seatbelts to restrain all passengers as required by New York Vehicle Traffic Law § 501(2)(a) and with a driver, Marmolejo, who possessed a "Class DJ" (i.e., junior) license. Compl. ¶ 17; State Court Compl. ¶¶ 13–14. Barbera further alleges that Scott unreasonably endangered J.B.'s physical safety and negligently inflicted emotional distress upon J.B. State Court Compl. ¶¶ 48–49. She also seeks recovery from Scott, Marmolejo, and Joa-Gilbert for loss of J.B.'s "services, society, and companionship" and the expenses she incurred for J.B.'s "hospital, medical and psychological care and treatment." Id. ¶ 60.

**B. The Insurance Policy**

Plaintiff initially agreed to defend Scott in the Underlying Action based on Scott's Policy that she had with Plaintiff at the time of the June 10, 2017 car accident. Compl. ¶ 19. Subsequently, Plaintiff "issued a disclaimer of coverage based upon the motor vehicle exclusion and the negligent supervision exclusion" in the Policy. Id.

The "Motor Vehicle Exclusion" states in pertinent part:

> We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. We will not apply this exclusion to:

---

[3] Neither the Complaint nor the State Court Complaint specifies her name.

> a) a motor vehicle in dead storage or used exclusively on an insured premises;
>
> b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured person;
>
> c) a motorized wheelchair;
>
> d) a vehicle used to service an insured premises which is not designed for use on public road and not subject to motor vehicle registration;
>
> e) a golf cart owned by an insured person when used for golfing purposes;
>
> f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
>
> g) lawn or garden implements under 40 horsepower; or
>
> h) bodily injury to a residence employee.

Policy at 20.

The "Negligent Supervision Exclusion" states in pertinent part:

> We do not cover bodily injury or property damage arising out of:
>
> a) the negligent supervision by any insured person of any person;
>
> \*\*\*
>
> arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under Section II of this policy.

Id.

**C. Plaintiff's Claims**

Plaintiff alleges that the Motor Vehicle Exclusion and the Negligent Supervision Exclusion bar coverage for the claims levied against Scott in the Underlying Action. Compl. ¶¶ 24–44. Plaintiff also avers that Barbera's claim for loss of services, society, and companionship is barred since such injuries do not qualify as bodily injury or property damage under the Policy. Id. ¶¶ 45–55. Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify Scott against Barbera's claims in the Underlying Action because the Policy does not cover those claims. Id. ¶¶ 30, 41, 52.

## III. LEGAL STANDARD

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Courts will assess whether judgment on the pleadings is warranted "by the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted." Rubeor v. Town of Wright, 191 F. Supp. 3d 198, 202–03 (N.D.N.Y. 2016) (Kahn, J.). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. In assessing whether this standard has been met, courts must "accept as true all allegations in the complaint." Houston v. Colvin, No. 12-CV-3842, 2014 WL 4416679, at *4 (E.D.N.Y. Sept. 8, 2014) (quoting Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008)). "[B]ecause [the] plaintiff is the moving party, the Court will view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of [the] defendant[s]." Am. Mgmt. Servs., Inc. v. Ray Weiner, LLC, No. 12-CV-947, 2014 WL 381470, at *1 (D. Conn. Feb. 3, 2014) (citing Madonna v. U.S., 878 F.2d 62, 65 (2d Cir. 1989)).

## IV. DISCUSSION

Before determining whether Plaintiff has a duty to defend and indemnify Scott, the Court must determine which jurisdiction's law applies to this action.

### A. Choice of Law

Plaintiff has invoked the Court's diversity jurisdiction over this case. Compl. ¶ 7. "A federal court sitting in diversity . . . must apply the substantive law of the state in which it is sitting, including the state's choice of law rules." Young Men's Christian Ass'n of Plattsburgh v. Philadelphia Indem. Ins. Co., No. 18-CV-565, 2018 WL 6267923, at *3 (N.D.N.Y. Nov. 30, 2018) (Kahn, J.) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Plaintiff argues that New York law applies to this action. Pl.'s Mem. at 7–8.[4] Barbera, Marmolejo, and Joa-Gilbert do not contest this assertion, and, in any event, the Court agrees with Plaintiff. See Young Men's Christian Ass'n of Plattsburgh, 2018 WL 6267923, at *3 ("The dispute here must be resolved

---

[4] Citations to memoranda refer to the page numbers counsel has applied to the briefings.

under New York Law, as the [insurance] policy was issued to a New York [resident] insuring activities and property in New York."). Therefore, the Court applies New York law to this case.

### B. Duty to Defend and Indemnify

Because the parties agree the Policy governs the dispute, there are no issues of material fact regarding Plaintiff's obligation to defend or indemnify Scott in the Underlying Action. Hence, the Court must determine whether Plaintiff has a duty to defend and indemnify Scott under the Policy "as a matter of law." See Great Am. Ins. Co. v. Houlihan Lawrence, Inc., No. 19-CV-1055, 2020 WL 1487294, at *6 (S.D.N.Y. Mar. 27, 2020) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d at 642; Nieves v. Comm'r of Soc. Sec., No. 17-CV-6844, 2019 WL 5722272, at *10 (S.D.N.Y. Aug. 9, 2019)).

As another court in this district has observed:

> Under New York law, an insurer has an "exceedingly broad" duty to defend the insured, Auto. Ins. Co. of Hartford v. Cook, [850 N.E.2d 1152, 1155 (N.Y. 2006)] (internal quotation marks and citation omitted), and the duty to defend is even broader than the duty to indemnify, see Seaboard Sur. Co. v. Gillette Co., [476 N.E.2d 272, 275 (N.Y. 1984)]. An insurer's obligation to provide a defense is triggered "whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." Auto. Ins. Co. of Hartford, [850 N.E.2d at 1155] (internal quotation marks and citation omitted). This duty to defend on the insurer's part remains, unless the insurer can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co., [476 N.E.2d 640, 641 (N.Y. 1985)].

Cent. Mut. Ins. Co. v. Willig, 29 F. Supp. 3d 112, 118 (N.D.N.Y. 2014).

As such, an insurer seeking to disclaim coverage based on an exclusion in the insured's policy "bears the burden of proving that the exclusion applies, that it is stated in clear and

unmistakable language, and is subject to no other reasonable interpretation." U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 356 (E.D.N.Y. 2006) (citing Continental Casualty Co. v. Rapid–American Corp., 609 N.E.2d 506, 512 (N.Y. 1993)). "Under New York law, insurance policies are interpreted according to general rules of contract interpretation." Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 98 (2d Cir. 2012). "Contract language is unambiguous if it 'provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 253 (S.D.N.Y. 2012) (quoting Olin Corp., 704 F.3d at 99), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., 548 F. App'x 716 (2d Cir. 2013). "If a court determines that the terms at issue are unambiguous, the terms are given their plain and ordinary meaning . . . ." Id. (citing, inter alia, Olin Corp., 704 F.3d at 99).

*1. Motor Vehicle Exclusion*

On its face, the Motor Vehicle Exclusion precludes coverage for bodily harm arising out of the use of a motor vehicle. Policy at 20. J.B. was injured in an automobile accident, Compl. ¶ 14, and none of the exceptions to the Exclusion apply, see Policy at 20. Because Barbera's claims in the Underlying Action stem from the injuries J.B. received in the car accident, Plaintiff concludes that her claims are not covered by the Policy. Pl.'s Mem. at 12. But, as Plaintiff acknowledges, that J.B. was injured in an automobile accident does not end the matter. See id. at 13. For, Barbera does not claim that Scott harmed J.B. through her own negligent use of an automobile. Rather, she claims that Scott harmed J.B. through her negligent supervision of him, which in turn proximately caused a car accident. Thus, Barbera, Marmolejo, and Joa-Gilbert

8

assert the Policy's disclaimer of coverage for injuries "arising out of the . . . use . . . of any motor vehicle" is inapplicable to this case because it is ambiguous as to this type of negligent conduct. See Barbera Mem. at 1–6; Marmolejo and Joa-Gilbert Mem. at 5–9.

In support of their argument, Barbera, Marmolejo, and Joa-Gilbert rely upon two cases—Lalomia v. Bankers & Shippers Ins. Co., 312 N.Y.S.2d 1018 (App. Div. 1970), aff'd, 291 N.E.2d 724 (N.Y. 1972) and Cone v. Nationwide Mut. Fire Ins. Co., 551 N.E.2d 92 (N.Y. 1989)—in which New York courts did not bar claims of negligent entrustment of a vehicle under automobile exclusions in homeowners' insurance policies. Barbera Mem. at 8–10 (citing Lalomia and Cone); Marmolejo and Joa-Gilbert Mem. at 10–11 (citing Cone). However, the New York Court of Appeals subsequently held that Lalomia and Cone "should be limited to their facts" and the act giving rise to liability, rather than the theory of liability alleged, determines whether an insurance policy exclusion applies. Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 668 N.E.2d 404, 406–07 (N.Y. 1996). In Mount Vernon, the victim of an assault sued the owner of the building in which the assault occurred alleging negligent supervision, management, and control of the premises. Id. at 405. The building owner sought indemnification from its insurer, which in turn disclaimed coverage on the basis of an exclusion in the insured's policy that stated: "[N]o coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery . . . ." Id. In resolving whether the exclusion precluded coverage, the Mount Vernon court observed:

> [T]he language of the policy controls . . . and while the theory pleaded may be the insured's negligent failure to maintain safe premises, the operative act giving rise to any recovery is the assault. While the insured's negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the insured's right to coverage based on the language of the contract

9

> between him and the insurer. Merely because the insured might be
> found liable under some theory of negligence does not overcome the
> policy's exclusion for injury resulting from assault.

Id. at 406.

Relying upon the holdings in Mount Vernon, courts applying New York law have precluded coverage under automobile exclusions in non-automobile specific insurance policies in situations like this action, i.e., for claims regarding bodily injuries that were proximately caused by a party's negligent behavior that did not involve the party's own negligent use of an automobile. See, e.g., U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co., 706 N.Y.S.2d 377, 380 (App. Div. 2000) (concluding that an automobile exclusion barred coverage of a claim that a bridge operator negligently failed to warn drivers about a pickup truck parked across a roadway); Tudor Ins. Co. v. Golovunin, No. 07-CV-4792, 2013 WL 5437025, at *6 (E.D.N.Y. Sept. 27, 2013) (finding that, under New York law, an automobile exclusion barred coverage of claims of negligent entrustment and negligent supervision); Country-Wide Ins. Co. v. Excelsior Ins. Co., 46 N.Y.S.3d 96, 98–99 (App. Div. 2017) (concluding that an automobile exclusion barred coverage of a claim that a truck possessed a defective trailer lift).

Implicitly acknowledging the weight of the case law suggests that automobile exclusions still bar coverage for claims regarding bodily injuries that were proximately caused by a party's negligent behavior that did not involve the party's own negligent use of an automobile, Barbera, Marmolejo, and Joa-Gilbert argue that this case law holds coverage is barred under automobile exclusions only when an injury is caused by an insured who has a connection to the vehicle at issue. See Barbera Mem. at 1–6; Marmolejo and Joa-Gilbert Mem. at 5–9. Because Scott did not

own, operate, or otherwise have any connection to the 2016 Kia,[5] Barbera, Marmolejo, and Joa-Gilbert conclude that the Motor Vehicle Exclusion is still inapplicable to Barbera's claims in the Underlying Action. Barbera Mem. at 3; Marmolejo and Joa-Gilbert Mem. at 5. The Court does not disagree that the case law tends to involve automobile exclusions that explicitly precluded coverage only when the insured had some connection to the car causing injury. See, e.g., U.S. Fire, 706 N.Y.S.2d at 378 ("This insurance does not apply . . . to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile . . . *owned or operated by or rented or loaned to any insured* . . . ." (emphasis added)). And the Court does not disagree that Scott did not have a connection to the 2016 Kia. Finally, the Court acknowledges that the case law does not clarify why courts have held coverage is precluded under automobile exclusions when the insured had a connection to the vehicle. But to the extent courts applying New York law have barred coverage in such situations, they must have done so because policy exclusions expressly required the insured to have some connection to the automobile rather than in furtherance of some policy rationale. In fact, an understanding of the purpose of automobile exclusions explains why courts would not want to limit the application of automobile exclusions in the manner suggested by Barbera, Marmolejo, and Joa-Gilbert.

As another court has noted:

> Motor vehicle exclusions . . . are commonly included in homeowner's policies. The basis for the motor vehicle exclusion is evident: using a motor vehicle designed for travel on public roads greatly increases the risk of bodily injury and property damage, and such liability is not within the risk which homeowner's contracts are designed to cover or for which premiums are charged. The risk of liability from the use of

---

[5] How Scott was therefore in a position to permit her daughter, J.B., and Marmolejo to drive the vehicle remains a mystery.

11

> a motor vehicle is traditionally and properly covered by motor vehicle
> policies, not by homeowner's insurance.

Allstate Ins. Co. v. Keillor, 511 N.W.2d 702, 705–06 (Mich. Ct. App. 1993), aff'd, 537 N.W.2d 589 (Mich. 1995) (quoting Farm Bureau Mut. Ins. Co. of Michigan v. Stark, 468 N.W.2d 498, 503 (Mich. 1991), overruled on other grounds by Smith v. Globe Life Ins. Co., 597 N.W.2d 28 (Mich. 1999)).

Based on this observation, the Keillor court found that ownership and use of a vehicle is not "necessary to trigger" an automobile exclusion. Keillor, 511 N.W.2d at 705. This Court agrees that requiring an insured to have some connection with a vehicle for an automobile exclusion to apply would only undermine the purpose of those exclusions, which is to prevent coverage of risk—operating a car—that homeowners' policies are not designed to cover. Hence, whether Scott had any connection to the 2016 Kia is irrelevant to determining whether the Motor Vehicle Exclusion bars coverage of Barbera's claims in the Underlying Action. See DMP Contracting Corp. v. Essex Ins. Co., 907 N.Y.S.2d 487, 489–90 (App. Div. 2010) ("The plain meaning of [the automobile exclusion], which focuses on the connection between a vehicle and the injury, not between a vehicle and the insured, is that bodily injury occurring as described is not covered, whether or not it is the insured who owned maintained, used or entrusted to others the subject automobile." (citing Allstate Ins. Co. v. Naai, 684 F. Supp. 2d 1220, 1230–31 (D. Haw. 2010), aff'd, 490 F. App'x 49 (9th Cir. 2012), which in turn discusses Keillor)); Ruge v. Utica First Ins. Co., 819 N.Y.S.2d 564, 564–66 (App. Div 2006) (finding that an automobile exclusion, which excluded coverage "for bodily injury, property damage, personal injury or advertising injury that arises out of the ownership, operation, maintenance, use, occupancy,

renting, loaning, entrusting, supervision, loading or unloading of . . . an auto," was not ambiguous and therefore barred coverage).[6, 7]

The Court therefore concludes that the Motor Vehicle Exclusion bars coverage of Barbera's claims in the Underlying Action since the Motor Vehicle Exclusion unambiguously does not require Scott to have any connection to the automobile for the Exclusion to apply. See Policy at 20 ("We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.").

### 2. Negligent Supervision Exclusion

Plaintiff argues in the alternative that, even if the Court were to conclude that Barbera's claims do not fall within the Motor Vehicle Exclusion, the Negligent Supervision Exclusion bars those claims. Pl.'s Mem. at 13. Courts applying New York law have not squarely addressed whether negligent supervision exclusions may also preclude claims regarding bodily injuries that

---

[6] The Court acknowledges that homeowners' policies may insure against different risks than those found in general liability policies, such as the policies addressed in DMP and Ruge. But as DMP's reliance on Naai (which dealt with an automobile exclusion in a homeowner's policy) suggests, there is no meaningful distinction between the purpose of such exclusions in homeowners' policies and general liability policies.

[7] Barbera attempts to provide a reason for allowing coverage when an individual does not have a connection to the automobile. She suggests that the Court's holding here "would lead to an absurd result: if a motorist suddenly lost control of his or her vehicle and crashed into Defendant Scott's house, causing structural damage . . . Defendant Scott [would have] no coverage under her homeowner's policy for the damage done to her home because it arose 'out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.'" Barbera Mem. at 4. Barbera's argument, however, is unconvincing. In the hypothetical posed by Barbera, the harm to Scott's home would be covered under Section I of the Policy, which covers Scott's first-party claims for damage done to her home. Policy at 6. The harm to Scott's home would not fall under the Motor Vehicle Exclusion since it is only applicable to third-party claims against Scott. See id. at 20.

were proximately caused by a party's negligent behavior that did not involve the party's own negligent use of an automobile. The Court concludes that negligent supervision exclusions do bar such claims.

In Mount Vernon, the Court of Appeals applied a "but for" test to determine whether insurance policy exclusions preclude claims for injuries that are proximately caused by a party's negligence. 668 N.E.2d at 407. "If no injury could have occurred without the activity excluded by the policy, there is no coverage." Atl. Cas. Ins. Co. v. W. Park Assocs., Inc., 585 F. Supp. 2d 323, 326 (E.D.N.Y. 2008) (citing Mount Vernon, 668 N.E.2d at 407); see also Scottsdale Indemn. Co. v. Beckerman, 992 N.Y.S.2d 117, 121 (App. Div. 2014) ("In other words, if the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within [a policy] exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action.")

Here, the Negligent Supervision Exclusion bars coverage of bodily injuries caused by "the negligent supervision by an insured person of any person . . . arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any . . . motorized land vehicle . . . ." Policy at 20. Since J.B.'s injuries would not have occurred without the "use . . . of any . . . motorized land vehicle[,]" id., the Negligent Supervision Exclusion must preclude Barbera's claims in the Underlying Action regarding those injuries.

Nevertheless, Barbera, Marmolejo, and Joa-Gilbert argue that just as the Motor Vehicle Exclusion does not preclude coverage of Barbera's claims since Scott "had no connection to" the 2016 Kia, neither does the Negligent Supervision Exclusion. Barbera Mem. at 7; see also

14

Marmolejo and Joa-Gilbert Mem. at 9. Their argument, however, fails for the reasons stated above. First, the Negligent Supervision Exclusion, like the Motor Vehicle Exclusion, is undoubtedly meant to prevent the coverage of risk—operating a car—that homeowners' policies are not designed to cover. Second, Barbera, Marmolejo, and Joa-Gilbert ignore the fact that the terms of the Negligent Supervision Exclusion do not require Scott to have any connection to the automobile for the Exclusion to apply. See Policy at 20. Consequently, the Court would conclude that Barbera's claims are barred under the Negligent Supervision Exclusion (even if the Motor Vehicle Exclusion did not dispose of the matter). See Allstate Ins. Co. v. Raabe, No. 08-CV-1576, 2010 WL 11561712, at *8 (D. Conn. Apr. 20, 2010) (concluding that, under Connecticut law, an identical negligent supervision exclusion barred claims sounding in negligent supervision); Allstate Indem. Co. v. Russell, 345 F. App'x 264, 266 (9th Cir. 2009) (finding same under Nevada law and observing that "it is irrelevant that [the insured] never owned, used or occupied the vehicle that caused [] injuries . . . . Nothing in [the negligent supervision exclusion's] language suggests that [it] appl[ies] only if the insured owned, used, or occupied the vehicle.").

Finally, Barbera, Marmolejo, and Joa-Gilbert argue that the Negligent Supervision Exclusion cannot preclude Barbera's claims since the Exclusion only bars coverage of negligent supervision "arising from the . . . use . . . of any . . . motorized land vehicle" and the 2016 Kia is not a motorized land vehicle. Barbera Mem. at 7–8; Marmolejo and Joa-Gilbert Mem. at 9–10. While they acknowledge that the 2016 Kia is a "motor vehicle," they conclude it cannot also be a "motorized land vehicle" because Plaintiff used the term motor vehicle in one part of the policy

and the term motorized land vehicle in other parts. Barbera Mem. at 7–8; Marmolejo and Joa-Gilbert Mem. at 9–10.

While the Court agrees that the 2016 Kia is indubitably a motor vehicle, see Olin Corp., 704 F.3d at 99 ("Words and phrases [in a contract] should be given their plain meaning." (alteration in original) (quoting LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005)), the Court disagrees that the automobile cannot also be a motorized land vehicle (even if the two terms were to possess different meanings). In fact, a close reading of the Policy suggests that the 2016 Kia is covered by both terms. The Negligent Supervision Exclusion only applies to motorized land vehicles that are "not covered under Section II" of the Policy. Policy at 20. As Plaintiff observes, "The only possible motorized land vehicles explicitly excluded from coverage under Section II of the [Policy] are motor vehicles." Reply at 10. Thus, if motor vehicles could not also be motorized land vehicles then the Negligent Supervision Exclusion would be rendered meaningless since there would be no such vehicles that fall under the Exclusion. "In construing the terms of an insurance contract, courts are cautioned that, 'an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable.'" U.S. Specialty Ins. Co. v. LeBeau, Inc., 847 F. Supp. 2d 500, 505–06 (W.D.N.Y. 2012) (quoting Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 558 (2d Cir. 2000)). Given this principle, the Court concludes that, under the Policy, a motor vehicle may also be a motorized land vehicle and, consequently, that the Negligent Supervision Exclusion covers the 2016 Kia.

In sum, the Court finds the Negligent Supervision Exclusion precludes coverage of Barbera's claims in the Underlying Action.

### 3. Loss of Services, Society, and Companionship

Finally, Plaintiff argues in the alternative that the Policy does not insure against Barbera's claim for loss of services, society, and companionship because those injuries do not qualify as bodily injury or property damage under the Policy. Id. ¶¶ 45–55. The Court agrees.

In Brustein v. New Amsterdam Cas. Co., 174 N.E. 304 (N.Y. 1931), the Court of Appeals found that insurance policies which contain limitations of liability to "bodily injuries" or "property damage" do not obligate the insurer to pay claims of loss of services. Brustein, 174 N.E. at 305. Brustein remains good law, see Chemung Cty. v. Hartford Cas. Ins. Co., 496 N.Y.S.2d 933, 935 (Sup. Ct. 1985) (noting the continued validity Brustein and its progeny); Lavanant v. Gen. Acc. Ins. Co. of Am., 595 N.E.2d 819, 821 (N.Y. 1992) (same), and so Barbera's claims for loss of services, society, and companionship would not be covered by the Policy (even if the Motor Vehicle Exclusion and Negligent Supervision Exclusion did not dispose of the matter), see Lavanant, 595 N.E.2d at 821 ("Loss of services claims are derivative; there are no allegations that plaintiff suffered any direct injury—physical or mental. The insurer's obligation to compensate for bodily injury does not extend to derivative claims for loss of services which occurred as a result of physical injuries suffered by a third person.").

\* \* \*

In sum, because the Court finds that Plaintiff may disclaim coverage of Barbera's claims in the Underlying Action, Plaintiff has no duty to defend or indemnify Scott for those claims. See New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York, 624 N.Y.S.2d 392, 395–96 (App. Div. 1995) (holding that a provider of a general liability policy had no duty to defend or indemnify claims of negligent supervision because an automobile exclusion barred coverage of

those claims); Tudor, 2013 WL 5437025, at *6 ("Because it is undisputed that the fatal car accident was the act giving rise to liability in this case, the Auto Exclusion shields plaintiff from any obligation to defend or indemnify any person or entity in connection with the July 27, 2005 accident.").

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Rule 12(c) Motion (Dkt. No. 22) is **GRANTED**. Plaintiff has no obligation to defend and indemnify Scott against Barbera's claims in the Underlying Action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 31, 2020
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge